**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LUKASZ STEFANOWICZ,

                   Plaintiff,

                                      Case No. 3:12-cv-11-J-JRK

vs.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

                   Defendant.

_____/

**OPINION AND ORDER**[2]

**I.  Status**

      Lukasz Stefanowicz ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision that found him disabled from November 15, 2003 through

August 7, 2006 but not thereafter.  Plaintiff's alleged inability to work is due to "chronic

venous insufficiency, phlebitis, leg ulcers, acute paralysis, nerve damage, chronic pain,

insomnia, depression, anxiety, and pitting edema."  Transcript of Administrative Proceedings

(Doc. No. 14; "Tr." or "administrative transcript"), filed March 13, 2012, at 95.  On August 10,

2007, Plaintiff filed applications for supplemental security income ("SSI") and disability

insurance benefits ("DIB"), alleging an onset date of November 15, 2003.  Tr. at 150-51 (DIB),

---

     1     Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14,
2013.  Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for
Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by
reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

     2     The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed
March 13, 2012; Reference Order (Doc. No. 17), signed March 14, 2012 and entered March 15, 2012.

152-53 (SSI).  Plaintiff's applications were denied initially, <u>see</u> Tr. at 89-90 (SSI), 86-88 (DIB), and were denied upon reconsideration, <u>see</u> Tr. at 97-98 (DIB), 99-100 (SSI).

On February 18, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified.  Tr. at 27-72.  At the time of the hearing, Plaintiff was thirty-one (31) years old.  Tr. at 32.  The ALJ issued a partially favorable Decision on April 12, 2010, finding Plaintiff disabled beginning on November 15, 2003 and ending on August 7, 2006, and determining that on August 8, 2006, Plaintiff medically improved to the point of no longer being disabled.  Tr. at 11-21.  After receiving additional evidence, Tr. at 5, on November 17, 2011, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's written Decision the final decision of the Commissioner.  On January 4, 2012, Plaintiff commenced this action under 42 U.S.C. § 405(g) and § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three (3) issues on appeal.  <u>See</u> Plaintiff's Brief (Doc. No. 20; "Pl.'s Br."), filed May 15, 2012.[3]  First, Plaintiff contends the ALJ erred in assessing the opinion of Denise Verones, Ph.D. ("Dr. Verones"), an examining psychologist.[4]  Pl.'s Br. at 10-14. Second, Plaintiff asserts that the ALJ erred in her analysis of the opinions of Ralph Zwolinski, M.D. ("Dr. Zwolinski"), a treating physician,[5] and Matthew Dorman, M.D. ("Dr. Dorman") of

---

[3]     For ease of discussion, the undersigned has rearranged the order of the issues presented.

[4]     <u>See</u> <u>infra</u> n.10 for the definition of an examining psychologist.

[5]     <u>See</u> <u>infra</u> n.14 for the definition of a treating physician.

Palm Coast Primary Care.[6] Id. at 23-25.  Third, Plaintiff claims the ALJ's conclusion that Plaintiff's condition medically improved on August 8, 2006 is flawed.  Id. at 15-22.  In opposition, Defendant responds as follows: 1) the ALJ's analysis of Dr. Verones's opinion was appropriate; 2) the ALJ properly discredited the opinions of Drs. Zwolinski and Dorman; and 3) the ALJ's finding that Plaintiff medically improved was reasonable.  See generally Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem."), filed June 14, 2012.

As to Plaintiff's first issue, the undersigned finds that the ALJ erred by failing to articulate the weight assigned to the opinion of Dr. Verones.  As to the second issue, the undersigned finds that the ALJ erred in discounting the opinion of Dr. Zwolinski.  Also as to the second issue, an unresolved conflict with respect to Dr. Dorman's opinion renders the undersigned unable to determine if the ALJ's treatment of that opinion is supported by substantial evidence.  Because the matter is due to be reversed and remanded on the first and second issues, and because the ALJ's further consideration of those medical opinions may have an impact on the factual findings at which issue three is aimed, issue three is not addressed.  See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

---

6       Dr. Dorman's relationship to Plaintiff is discussed in Section IV.B.2.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 15-21.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 15, 2003, the alleged onset date." Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found that "[a]t all times relevant to this [D]ecision, [Plaintiff] has had the following severe impairment: Varicose Veins." Tr. at 15 (emphasis and citation omitted).  The ALJ determined that Plaintiff's "reflex sympathetic dystrophy and depression" were nonsevere impairments. Tr. at 15.  At step three, the ALJ ascertained that "[f]rom November 15, 2003 through August 7, 2006, the period during which [Plaintiff] was disabled, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled an

---

7       "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citations omitted).

The ALJ determined that "from November 15, 2003 through August 7, 2006, [Plaintiff] had the residual functional capacity [("RFC")] to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." Tr. at 16 (emphasis omitted). At step four, the ALJ found that Plaintiff "[f]rom November 15, 2003 through August 7, 2006, [Plaintiff] was unable to perform any past relevant work" as a "Fountain Server"; "Instant Print Operations"; "Janitor"; "Mortgage Interviewer"; and "Tool Crib Attendant." Tr. at 16 (emphasis and citation omitted). At step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ determined that "[f]rom November 15, 2003 through August 7, 2006, . . . there were no jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. at 16 (emphasis and citation omitted). The ALJ concluded that Plaintiff "was under a disability . . . from November 15, 2003 through August 7, 2006." Tr. at 17 (emphasis and citation omitted).

Because the ALJ found that Plaintiff's disability ended on August 7, 2006 (a date prior to the ALJ's Decision), the ALJ engaged in a second sequential evaluation that is provided for in the Regulations. See 20 C.F.R. §§ 404.1594(f), 416.994(b). The second sequential inquiry asks, in substance, whether the claimant (1) is currently engaging in substantial gainful activity; (2) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (3) has experienced medical improvement; (4) has experienced medical improvement that is related to the ability to work; (5) has experienced medical improvement, but an exception to the medical improvement applies; (6) has current

impairments that when considered in combination are severe; (7) can perform past relevant work; and (8) can perform other work that exists in the national economy. See 20 C.F.R. §§ 404.1594(f), 416.994(b).

Regarding the second sequential evaluation, the ALJ found as follows.[8]  At step two, the ALJ determined that "[b]eginning on August 8, 2006, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR, Part 404, Subpart P, Appendix 1."  Tr. at 17 (emphasis and citation omitted). At step three, the ALJ found that "[m]edical improvement occurred as of August 8, 2006, the date [Plaintiff's] disability ended."  Tr. at 17 (emphasis and citation omitted).  The ALJ then carefully considered the entire record and determined that "beginning on August 8, 2006, [Plaintiff] has had the [RFC] to perform the full range of sedentary work . . . . [Plaintiff] needs the ability to briefly stand up beyond normal work breaks allowed for a stretch period done at the desk. He also needs the ability to prop his leg up on a stool."  Tr. at 18 (emphasis omitted).  At step four, the ALJ determined that Plaintiff's "medical improvement . . . is related to the ability to work."  Tr. at 20 (emphasis and citation omitted).[9]  The ALJ found, at step seven, that since August 8, 2006, Plaintiff "has been capable of performing past relevant work as [a] mortgage loan interviewer."  Tr. at 20 (emphasis and citation omitted). Additionally, although not required to, the ALJ proceeded to step eight and observed that

---

8       The ALJ apparently carried over from the first sequential evaluation process her finding in relation to the first step: Plaintiff was not engaging in substantial gainful activity. See Tr. at 15.

9       The ALJ apparently carried over from the first sequential evaluation process her finding in relation to the sixth step: Plaintiff has the severe impairment of varicose veins. See Tr. at 15. Although the ALJ did not expressly state her step six finding that no exception to the medical improvement applies, the finding is presumed because the ALJ continued the sequential evaluation.

Plaintiff could also perform work available in significant numbers in the national economy including "Dresser"; "Document Preparer (Scanning)"; and "telecommuting jobs" such as "medical billing and coding, medical transcribing, and customer service." Tr. at 20.  The ALJ, therefore, concluded that Plaintiff's "disability ended on August 8, 2006." Tr. at 20.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, the undersigned addresses Plaintiff's first issue directed at the opinion of Dr. Verones, followed by Plaintiff's second issue directed at the medical opinions of Dr. Zwolinski and Dr. Dorman.

### A.  Opinion of Dr. Verones

Dr. Verones is a licensed psychologist and is considered an examining physician under the Regulations.[10]  Plaintiff contends the ALJ failed to consider the Global Assessment of Functioning ("GAF") score assigned by Dr. Verones and Dr. Verones's opinion that Plaintiff would be "unable to manage the demands of a job."  Pl.'s Br. at 12.  Defendant, responding, argues that the ALJ appropriately considered and addressed Dr. Verones's opinion.  See Def.'s Mem. at 12-16.

Dr. Verones examined Plaintiff on January 28, 2007.  Tr. at 543.  In relevant part, Dr. Verones found as follows.  Plaintiff "believes that his emotional functioning is poor due to his medical problems."  Tr. at 544.  Plaintiff's affect "was appropriate to the situation" during the examination.  Tr. at 544. Plaintiff's "thought processes were logical and coherent."  Tr. at 545.  Plaintiff's judgment "appear[ed] to be good."  Tr. at 545.  Dr. Verones diagnosed Plaintiff, in part, with "293.83 Mood Disorder due to Medical Condition," and assigned a GAF score of 50.  Tr. at 545.  Dr. Verones recognized that Plaintiff's "depression [wa]s related to his medical problems . . . ."  Tr. at 546.  Dr. Verones noted, "I do not think that [Plaintiff] would

_____

10      A "[n]ontreating [or examining] source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]. The term includes an acceptable medical source who is a consultative examiner for [the Social Security Administration], when the consultative examiner is not [the claimant's] treating source."  20 C.F.R. § 404.1502.

be able to manage the demands of a job unless his medical condition improves.  If it does not, it is likely that he will become more depressed over time."  Tr. at 546.

When analyzing medical opinions,[11] "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 834 (11th Cir. 2011) (unpublished) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)).  Failure to do so cannot be saved by "[a] statement that the ALJ carefully considered all the testimony and exhibits."  Id. (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.1981)).  When an ALJ does not describe the weight assigned to medical opinions, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Cowart, 662 F.2d at 735.  It is not up to a reviewing court to scour the record to find support for an ALJ's decision; rather, the ALJ must support his or her decision within.  See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir.1984) (declining "to affirm simply because some rationale might have supported the ALJ's conclusion").

In classifying Plaintiff's depression as nonsevere, the ALJ noted that Dr. Verones "advised that [Plaintiff's] mood disorder was due to [] his physical medical condition."  Tr. at 15 (citing Tr. at 543-46).  That one sentence is the only mention of Dr. Verones's opinion in the ALJ's Decision.  Although the ALJ need not cite to or discuss every piece of medical evidence in the record, "it is impossible for a reviewing court to determine whether the

---

11      "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

ultimate decision on the merits of the claim is rational and supported by substantial evidence" when an ALJ fails to detail the weight assigned to a medical opinion. Cowart, 662 F.2d at 735. The undersigned cannot determine how or to what extent the ALJ analyzed Dr. Verones's opinion. The ALJ's lack of explanation frustrates judicial review, and the undersigned, therefore, cannot determine whether the Decision is supported by substantial evidence. Accordingly, this matter is due to be reversed and remanded for further consideration of Dr. Verones's opinion regarding Plaintiff's depression.[12]

### B. Opinions of Dr. Zwolinski and Dr. Dorman

Plaintiff frames this issue as follows: "The Commissioner erred in rejecting the opinions of multiple treating specialists and physicians that [Plaintiff] suffers from severely debilitating complex regional pain syndrome." Pl.'s Br. at 1, 22 (emphasis omitted). Substantively, Plaintiff claims that the ALJ erred by discrediting Dr. Zwolinski's opinion and Dr. Dorman's opinion. Id. at 23-25. In response, Defendant argues that the ALJ properly considered and assigned "little weight" to those opinions. See Def.'s Mem. at 10-11.

---

[12]    The undersigned recognizes that a contention that an ALJ failed to credit GAF scores, standing alone, is generally insufficient to warrant reversal. This is so because "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2000 WL 1173632 (Aug. 21, 2000)); see also Wilson v. Astrue, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009). That is not the case here. Plaintiff points out that the ALJ failed to consider the GAF score, and also points out that the ALJ failed to consider the whole opinion that included the GAF score.

### 1.  Analysis of Dr. Zwolinski's Opinion

Dr. Zwolinski began treating Plaintiff on about October 1, 2008.  Tr. at 655-57.[13]  On that date, Dr. Zwolinski prescribed methadone for Plaintiff based on "the unique properties of this medication regarding this type of pain."  Tr. at 657.  Plaintiff continued to see Dr. Zwolinski on about a monthly basis until at least May 21, 2009.  Tr. at 645-54.  Plaintiff had some improvement in his pain with the methadone.  Tr. at 645-54.  The methadone levels, however, were adjusted on multiple occasions due to increases in pain.  Tr. at 645, 647, 651, 653, 654.  On November 26, 2008, Plaintiff reported that "his pain does seem to have worsened a bit since [the] initial dramatic improvement on the methadone."  Tr. at 653.  On April 22, 2009, in addressing Plaintiff's lack of insurance, Dr. Zwolinski noted that Plaintiff "is so impaired by this condition at such a young age with nothing else really helping to make him more functional."  Tr. at 646.  On May 21, 2009, Dr. Zwolinski observed that Plaintiff "does use a cane to walk and does have an antalgic gait."  Tr. at 645.

Throughout his treatment of Plaintiff, Dr. Zwolinski diagnosed Plaintiff with the following: "Chronic venous insufficiency," "Bilateral leg pain," and "Questionable left side complex regional pain syndrome," Tr. at 656; "Chronic venous insufficiency bilaterally with complex regional pain," Tr. at 653; "Chronic venous insufficiency in the legs bilaterally with a questionable complex regional pain syndrome," Tr. at 652; "Chronic venous insufficiency with possible Complex Regional Pain Syndrome," Tr. at 650, 651; "Chronic lower extremity pain associated with venous insufficiency and multiple surgical procedures," Tr. at 647; "Chronic pain secondary to venous insufficiency," Tr. at 646; and "Chronic pain secondary

---

13    Duplicate found at Tr. at 623-25.

to ischemia," Tr. at 645.  Although the wording changed, Dr. Zwolinski always noted the "chronic" nature of Plaintiff's condition.  See Tr. at 645, 646, 647, 650, 651, 652, 653, 656.

On August 19, 2009, Dr. Zwolinski authored a letter and addressed it to Plaintiff's former counsel.  Tr. at 616.  In the letter, Dr. Zwolinski noted that Plaintiff's condition is chronic, he does not have medical insurance and therefore he cannot afford some medication, and his pain is generally a 7 on a scale of 10.  Tr. at 616.  He further noted the necessity of some form of medical insurance for Plaintiff because "[i]t [wa]s only with the ability to try some other non-narcotic medication that [Dr. Zwolinski] may at some point be able to diminish [Plaintiff's] need for narcotic medication and perhaps return him to some form of gainful employment."  Tr. at 616.

The Regulations instruct ALJs how to properly weigh the medical opinions of treating physicians.[14]  See 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment

---

14      A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, the ALJ stated, "As for opinion evidence, Dr. Zwolinski of the Neurology and Pain Relief, M.D., opined that [Plaintiff is] totally unable to work as a result of his current pain and chronic venous insufficiency, which also causes numbness in his lower extremities and imbalance."  Tr. at 19 (citing Tr. at 616).  The ALJ assigned "little weight" to Dr. Zwolinski's opinion "because it contradicts treatment notes that show that [Plaintiff's] condition improved while under his care."  Tr. at 19.

While Dr. Zwolinski's treatment notes reflect some positive changes in Plaintiff's pain with the methadone treatment, the notes also consistently reflect serious, continuing concern

about Plaintiff's condition and resulting pain, as well as continual medication adjustments. It appears that Plaintiff's condition was ever-changing; Dr. Zwolinski's diagnoses varied (most often in the wording of the diagnoses), Plaintiff's pain level varied, as did the amount of methadone Plaintiff was receiving.  The only constant about Plaintiff's condition was that Dr. Zwolinski considered it to be "chronic."  The ALJ failed to consider or failed to document her consideration of Dr. Zwolinski's concerns and the nature of Plaintiff's condition as diagnosed by Dr. Zwolinski, including the multiple adjustments in the methadone levels.  It is unclear whether the ALJ considered the entirety of the treatment notes or only those portions favorable to her Decision.  As it stands, the undersigned cannot find that the ALJ's reasoning amounts to the required "good cause" to discount a treating physician.  Accordingly, on remand, the ALJ shall reconsider the entirety of Dr. Zwolinski's opinion, including his treatment notes.

### 2.  Analysis of Dr. Dorman's Opinion

On November 18, 2009, Dr. Dorman wrote a letter in which he offered an opinion on Plaintiff's condition.[15]  Tr. at 633.  He observed that upon "personally seeing [and] examining [Plaintiff,] I found him to suffer chronic intractable, debilitating [bilateral] leg pain related to chronic venous insufficiency."  Tr. at 633.  Dr. Dorman noted that Plaintiff "presents w[ith] stasis dermatitis and findings suggestive of reflex sympathetic dystrophy (complex regional pain syndrome)."  Tr. at 633.

---

15      The letter was written "at [Plaintiff's] request" and was addressed "To Whom It May Concern."  Tr. at 633 (capitalization omitted).

The ALJ summarized Dr. Dorman's opinion as follows: Plaintiff "was debilitated and had pain . . . due to chronic venous insufficiency and reflex sympathetic dystrophy." Tr. at 19 (referring to Tr. at 633). The ALJ assigned "little weight" to Dr. Dorman's opinion for two (2) reasons: 1) Dr. Dorman "lacked an established treatment history with [Plaintiff] before issuing the opinion"; and 2) "Dr. Dorman['s] opinion relies on [Plaintiff] having reflex sympathetic dystrophy[;] however[,] a whole body bone scan revealed no evidence of reflex sympathetic dystrophy." Tr. at 19 (citing Tr. at 639).

Other than the letter, the undersigned has not located any treatment notes or any other evidence or records that the undersigned can definitively tie to Dr. Dorman. Plaintiff cites to treatment notes that he says are those of Dr. Dorman. See Pl.'s Br. at 18 (citing Tr. at 620-29, 635). The undersigned assumes that Plaintiff intended to cite to the treatment notes from "Palm Coast Urgent Care," where presumably Dr. Dorman works.[16] Tr. at 619-21, 634-36. The undersigned, however, cannot determine whether those notes were actually completed by Dr. Dorman or someone else. Without this conflict being reconciled, the undersigned cannot determine if the ALJ's treatment of Dr. Dorman's opinion is supported by substantial evidence. On remand, the ALJ shall reconcile this conflict and if appropriate, reconsider Dr. Dorman's opinion.

## V.  Conclusion

Upon review, the undersigned finds that this matter is due to be reversed and remanded. The ALJ's failure to specify the weight assigned to Dr. Verones's opinion

---

16    Dr. Dorman's letterhead suggests that he works for "Palm Coast Primary Care." Tr. at 633. Palm Coast Primary Care and Palm Coast Urgent Care share the same mailing address with the exception of the suite number. Compare Tr. at 633, with Tr. at 640. It is not clear from the administrative transcript whether they are one in the same.

-15-

frustrates judicial review.  Additionally, the ALJ failed to articulate "good cause" to discount the opinion of Dr. Zwolinski, and it cannot be determined whether the assignment of weight to Dr. Dorman's opinion is supported by substantial evidence.

After due consideration, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Reevaluate the medical opinion of Dr. Verones, state with particularity the weight afforded, and the reasons therefor;

(B)     Reevaluate the medical opinion of Dr. Zwolinski, state with particularity the weight afforded, and the reasons therefor.  If the opinion is discounted, reasons amounting to good cause and supported by substantial evidence shall be stated;

(C)     Reconcile whether the treatment notes from Palm Coast Urgent Care are those of Dr. Dorman.  If appropriate, reevaluate the medical opinion of Dr. Dorman, state with particularity the weight afforded, and the reasons therefor;

(D)     Ensure Plaintiff's other issues raised in this appeal are appropriately addressed, if necessary; and

(E)     Take such other action as may be necessary to resolve these claims properly.

-16-

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 29, 2013.


_JAMES R. KLINDT_
JAMES R. KLINDT
United States Magistrate Judge


jlk
Copies to:
Counsel of Record